**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ALAN JENKINS** :<br>  :<br>       **Plaintiff** :<br>  :<br>   v. :<br>  :<br>  :<br>  :<br>**ATLAS WORLD GROUP, INC.** :<br>  :<br>**ATLAS VAN LINES, INC.** :<br>  :<br>**CORNERSTONE RELOCATION** :<br>**GROUP, LLC** :<br>  :<br>       **Defendants** :<br>  : | **C.A. NO.:**<br><br><br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

**I.   PRELIMINARY STATEMENT**

Plaintiff, Alan Jenkins ("Plaintiff"), through his undersigned counsel, files this Civil Action Complaint against his former employer, Defendants Atlas World Group, Inc., Atlas Van Lines, Inc., and Cornerstone Relocation Group, LLC (collectively "Defendants"). Plaintiff asserts discrimination, retaliation, and interference claims against Defendants under the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.*, ("ADA"); the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"); the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). Plaintiff seeks all available damages, including economic loss, compensatory, liquidated, and punitive damages, along with all other relief under applicable federal and state law as this Court deems appropriate.

1

## II.     PARTIES

1. Plaintiff, Alan Jenkins ("Plaintiff"), is an individual and citizen of the Pennsylvania, residing in Abington, Pennsylvania 19001.

2. Plaintiff was born in 1957 and was age 64 at the time Defendants terminated his employment.

3. At all times material hereto, Plaintiff was a qualified individual with a disability within the meaning of the laws at issue, in that he suffered from a physical impairment which substantially limited one or more major life activity, had a record of such impairment, and/or was regarded or perceived by Defendants as having such impairment.

4. Defendant Atlas World Group, Inc., is a Delaware corporation that is the parent company of several wholly-owned and controlled subsidiary corporations, including Defendant Cornerstone Relocation Group, LLC, and Defendant Atlas Van Lines, Inc.

5. Defendant Atlas World Group, Inc., maintains a principal place of business at 1212 St. George Road, Evansville, Indiana 47711.

6. Defendant Atlas Van Lines, Inc., is a Delaware corporation that maintains a principal place of business at 1212 St. George Road, Evansville, Indiana 47711.

7. Defendant Cornerstone Relocation Group, LLC, is a New Jersey corporation that maintains a principal place of business at 106 Allen Road, Basking Ridge, New Jersey 07920.

8. Defendant Atlas World Group, Inc., by and through its wholly-owned and controlled subsidiary corporation Defendant Cornerstone Relocation Group, LLC, maintains a place of business in New Jersey, including the offices at which Plaintiff worked; and conducts business through its subsidiary companies, including Defendant Cornerstone Relocation Group, LLC.

9. Defendant Atlas World Group, Inc., by and through its wholly-owned and controlled subsidiary corporation Defendant Cornerstone Relocation Group, LLC; maintains systematic and continuous activity such that it is at home in New Jersey; and has employed scores of people in New Jersey, including Plaintiff.

10. Upon information and belief, Defendant Atlas World Group, Inc., shares with its controlled subsidiary companies, including Defendant Cornerstone Relocation Group, LLC, and Defendant Atlas Van Lines, Inc., *inter alia*, common ownership, management, administrative services, personnel, policies, and employment practices.

11. Defendant Atlas World Group, Inc., and its subsidiary companies, including Defendant Cornerstone Relocation Group, LLC, and Defendant Atlas Van Lines, Inc., are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise.

12. Defendants collectively retained significant control over the terms and conditions of Plaintiff's employment.

13. At all times material hereto, Defendant Atlas Van Lines, Inc., served as Plaintiff's W-2 employer.

14. At all times material hereto, Defendant Atlas Van Lines, Inc., served as the common paymaster for Defendant Cornerstone Relocation Group, LLC, its fellow subsidiary of Defendant Atlas World Group, Inc.

15. At all times material hereto, Defendants collectively employed more than 50 employees.

16. At all times material to this action, Defendants were an employer within the meanings of the state and federal laws which form the basis of this action.

17. At all times material to this action, Plaintiff was an employee of Defendants within the meanings of the state and federal laws which form the basis of this action.

18. At all times material to this action, Plaintiff was eligible for, and entitled to, leave under the FMLA.

19. At all times material to this action, Defendants acted by and through their authorized agents, servants, contractors and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

### III. JURISDICTION AND VENUE

20. The causes of action set forth in this Complaint arise under the ADA, 42 U.S.C. §12101, *et seq.* (Count I); the FMLA, 29 U.S.C. §2601, *et seq.* (Count II); the ADEA, 29 U.S.C. § 621, *et seq.* (Count III); and the NJLAD, N.J.S.A. 10:5-1, *et seq.* (Count IV).

21. The District Court has subject matter jurisdiction over Counts I-III (ADA; FMLA; ADEA) pursuant to 28 U.S.C. §1331.

22. The District Court has supplemental jurisdiction over Count IV (NJLAD) pursuant to 28 U.S.C. §1367.

23. Defendants are subject to the personal jurisdiction of this Court because, *inter alia*, the case arises out of or relates to the contacts of Defendants with New Jersey, the contacts of Defendants are continuous and systematic such that Defendants are at home in New Jersey, and/or Defendants have consented to personal jurisdiction by personal service within New Jersey via an authorized agent of the corporation.

24. Venue is proper under 28 U.S.C. § 1391(b).

25. On or about September 21, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of the acts of discrimination and retaliation alleged herein.

26. On or about February 15, 2023, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue.

27. Plaintiff has filed this action within 90 days of receiving the Dismissal and Notice of Right to Sue from the EEOC.

## IV. FACTUAL ALLEGATIONS SUPPORTING CLAIMS

28. Defendants represent a family of companies that deliver transportation, relocation, and related logistics services on both a domestic and international scale.

29. Plaintiff is an experienced financial executive who specializes in international employee relocation across all facets of the industry. Plaintiff is a Certified Public Accountant (CPA) who also, during his employment with Defendants, held the professional designations of Certified Relocation Professional (CRP) and Global Mobility Specialist (GMS).

30. Plaintiff was employed by Defendants from on or about May 27, 1997 until on or about December 6, 2021, the date of his termination.

31. Plaintiff began his career with Defendants as the Vice President of Finance for Defendant Cornerstone Relocation Group, LLC ("Defendant Cornerstone").

32. In or about January 2017, Plaintiff transitioned to the position of Vice President of Corporate Services for Defendant Cornerstone, a move which entailed no reduction to Plaintiff's salary or benefits. Plaintiff remained in this role until his termination.

33. As Vice President of Corporate Services, Plaintiff served as the primary point of contact and relationship manager for Defendant Cornerstone's corporate services (contracts, legal

liaison, risk management, privacy compliance, and facility management). Additionally, Plaintiff's role supported various real estate projects and business continuity planning.

34. As Vice President of Corporate Services, Plaintiff reported directly to Janelle Piatkowski ("Piatkowski"), President and CEO of Defendant Cornerstone. Piatkowski reported to Jack Griffin ("Griffin"), Chairman and CEO of Defendant Atlas World Group, Inc.

35. At all times during his 24-year career, Plaintiff was based out of Defendant Cornerstone's headquarters located in Basking Ridge, New Jersey.

36. During his 24-year tenure with Defendants, Plaintiff was a loyal, dedicated employee who performed his job duties competently. Plaintiff regularly received merit increases in compensation and positive performance evaluations during his employment.

37. Plaintiff suffers from coronary artery disease, a medical condition that constitutes a disability under the ADA and NJLAD in that it substantially limits one or more of Plaintiff's major life activities, including, but not limited to, normal cardiac functioning.

38. Plaintiff was initially diagnosed with coronary artery disease in or about 2012. Since then, Plaintiff has undergone several medical procedures, including stent insertion and coronary angioplasty, to treat his medical condition.

39. From 2012 through 2021, Plaintiff was able to manage the symptoms and treatment of his disability without having it hinder, or impede, his ability to perform the essential functions of his job for Defendants.

40. In the spring of 2021, Plaintiff began to experience exacerbated symptoms of his disability, including angina—a type of chest pain caused by reduced blood flow to the heart. Plaintiff's angina caused him to feel persistent squeezing, pressure, and heavy tightness in his chest.

41. In or about early April 2021, Plaintiff apprised Diane McIntire ("McIntire"), Vice President of Human Resources, and Deb Frost ("Frost"), Senior Vice President, Global Services, of his worsening symptoms related to his disability. In the same discussions, Plaintiff also informed McIntire and Frost of his efforts to schedule medical appointments with various cardiologists to determine the cause of the escalating symptoms, in addition to the best course of treatment moving forward.

42. Soon after, on or about April 30, 2021, Plaintiff requested that Defendants grant him intermittent leave under the FMLA due to the onset of his new symptoms, which, at times, had a debilitating effect on his physical state. Plaintiff made this request to Piatkowski and McIntire. Plaintiff specifically informed Piatkowski and McIntire of the nature of his medical condition, his need to seek treatment, and the unknown prognosis moving forward.

43. Defendants ultimately approved Plaintiff's request for intermittent FMLA leave.

44. Plaintiff's request for intermittent FMLA leave constituted a request for a reasonable accommodation for his disability under the ADA and NJLAD.

45. During his 24-year tenure with Defendants, prior to April 30, 2021, Plaintiff had not once requested leave under the FMLA.

46. Following Plaintiff's request for FMLA, Defendants began to retaliate against him for exercising his statutory rights under same.

47. For example, Piatkowski began treating Plaintiff in a cold and dismissive manner. She ignored Plaintiff, would not take his phone calls or even communicate with him, and dispatched other employees to needlessly micromanage his work.

48. Ultimately, Plaintiff used intermittent FMLA leave on or about these dates: March 24, 2021 (backdated); April 27, 2021 (backdated); May 12, 2021, June 1, 2021, and June 2, 2021.

Plaintiff used these FMLA leave days in order to attend medical appointments with several cardiac specialists, including Howard Hermann, MD, and Michael Aker, MD, of Penn Medicine.

49. On or about June 2, 2021, Jonathan Gold, MD ("Dr. Gold"), Plaintiff's treating cardiologist, instructed Plaintiff to commence a continuous medical leave of absence as a result of escalating disability symptoms.

50. Later that day, Plaintiff unsuccessfully attempted to contact Piatkowski and McIntire by telephone to let them know about his treatment status and need for an extended medical leave of absence under the FMLA. Plaintiff continued his contact attempts with Piatkowski and McIntire through the following day, June 3, 2021.

51. Plaintiff finally connected with Piatkowski and McIntire on the morning of June 3, 2021. On the call, Plaintiff requested a continuous leave of absence under the FMLA due to the exacerbated state of his disability, in accordance with his doctor's directive.

52. Plaintiff's request for a continuous leave of absence under the FMLA constituted a request for a reasonable accommodation under the ADA and NJLAD.

53. In response to Plaintiff's request, Piatkowski and McIntire abruptly informed Plaintiff that he was being placed on furlough, effective immediately, purportedly due to business hardship resulting from the COVID-19 pandemic. McIntire told Plaintiff that the furlough could last up to six months, or until December 6, 2021. According to McIntire, if Defendants did not "recall" Plaintiff by that date, Plaintiff's employment with the company would be terminated.

54. At the time of Plaintiff's furlough, Defendants knew Plaintiff's age (64), knew that Plaintiff had coronary artery disease for which he was undergoing active treatment, and knew that Plaintiff had recently used intermittent FMLA leave and planned to take a continuous FMLA leave.

55. Defendants selected Plaintiff for furlough because of his age and/or his disability and/or his active use of FMLA.

56. Defendants failed to engage Plaintiff in the interactive process by rejecting his request for an accommodation in the form of continuous FMLA leave and instead proceeding with the furlough.

57. Defendants interfered with Plaintiff's statutory rights under the FMLA by rejecting his request for continuous FMLA leave and instead proceeding with the furlough.

58. Defendants furloughed Plaintiff, after over 24 years of service, the same day he requested a continuous leave of absence under the FMLA and approximately 5 weeks from when he began using intermittent FMLA leave.

59. Defendants denied Plaintiff an FMLA leave of absence in violation of the FMLA.

60. Defendants did not offer Plaintiff a downgraded position or a position with reduced pay in lieu of furlough.

61. From in or about April 2021 through in or about June 2021, Defendants also furloughed the following individuals over 40 who also held Vice President positions with Defendant Cornerstone: (1) Mark Rabe (approximate age 60); and (2) Betsy Welch (approximate age 60).

62. Defendants did not furlough and instead retained the following similarly situated, substantially younger, and non-disabled employees within the Defendant Cornerstone organizational hierarchy (without limitation): (1) Cathy Ronayne, Vice President of Information Management & Service Optimization (approximate age 45); (2) Rick Ullrich, Vice President of Finance (approximate age 56); (3) Janet Olkowski, Vice President, Global Business Development

(approximate age 56); and (4) Tony Bosco-Schmidt, Vice President, Client Financial Services (approximate age 50).

63. To Plaintiff's knowledge, information, and belief, Plaintiff was the only disabled employee furloughed by Defendants during the pandemic.

64. To Plaintiff's knowledge, information, and belief, Plaintiff was the only employee actively using FMLA leave furloughed by Defendants during the pandemic.

65. On or about November 29, 2021, Defendants notified Plaintiff by letter that he would not be recalled from furlough, thereby terminating his employment, effective December 6, 2021. Defendants informed Plaintiff that the reason for his termination was "continued unforeseeable business circumstances related to the COVID-19 worldwide pandemic."

66. Defendants did not offer Plaintiff any other position that would have allowed him to remain employed.

67. Defendants' stated reason for terminating Plaintiff's employment is pretextual.

68. To Plaintiff's knowledge, information, and belief, Defendants replaced Plaintiff with the following substantially younger, non-disabled employees and/or disseminated Plaintiff's job duties and to the following substantially younger, non-disabled employees: Frost, Ullrich, Ronayne, and Bosco-Schmidt.

69. Based on, *inter alia,* Plaintiff's knowledge, skills, experience, and outstanding record with Defendants, Plaintiff was at least as, or better, qualified than these younger and/or nondisabled individuals who were not selected for furlough and were retained in their current positions.

70. Plaintiff's age (64) was a determinative factor in connection with Defendants' discriminatory treatment of him, including placing him on furlough and terminating his employment.

71. Plaintiff's disability, including his record of disability and Defendants' regarding him as disabled, was a motivating and/or determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including placing him on furlough and terminating his employment.

72. Plaintiff's requests for reasonable accommodations were motivating and/or determinative factors in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff, including placing him on furlough and terminating his employment.

73. Defendants interfered with Plaintiff's rights under the FMLA when they denied his request for an FMLA leave of absence and instead furloughed him.

74. Plaintiff's use of intermittent leave and/or his request for a continuous leave of absence under the FMLA were motivating and/or determinative factors in Defendants' retaliatory treatment of Plaintiff, including placing him on furlough and terminating his employment.

75. As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

76. Defendants acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights.

### COUNT I – ADA
### (Disparate Treatment; Retaliation; Failure to Accommodate)
### Plaintiff v. Defendants

77. Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

78. Defendants have violated the ADA by committing the foregoing acts of discrimination and retaliation against Plaintiff, including, without limitation, failing to engage in an interactive process and/or provide Plaintiff reasonable accommodations, selecting Plaintiff for furlough, and/or terminating his employment.

79. As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless this Court grants the relief requested herein.

80. Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants imposing punitive damages.

### COUNT II – FMLA
### (Retaliation; Interference)
### Plaintiff v. Defendants

81. Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

82. By committing the foregoing acts of retaliation based on Plaintiff's use of intermittent leave and/or request for continuous FMLA leave, Defendants have violated the FMLA.

83. Defendants interfered with Plaintiff's statutory rights under the FMLA by rejecting his request for continuous FMLA leave and instead proceeding with the furlough.

84. Defendants knew and/or showed reckless disregard as to whether the foregoing acts violated the FMLA, thereby warranting the imposition of liquidated damages.

85. As a direct and proximate result of Defendants' violation of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

86. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the FMLA unless this Court grants the relief requested herein.

## COUNT III – ADEA
### (Disparate Treatment)
### Plaintiff v. Defendants

87. Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

88. Defendants have violated the ADEA by committing the foregoing acts of age discrimination against Plaintiff, including, without limitation, selecting Plaintiff for furlough and/or terminating his employment.

89. As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless this Court grants the relief requested herein.

90. Defendants' violations of the ADEA were willful and warrant imposing liquidated damages.

## COUNT IV – NJLAD
### (Disparate Treatment, Retaliation, Failure to Accommodate)
### Plaintiff v. Defendants

91. Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

92. Defendants have violated the NJLAD by committing the foregoing acts of discrimination and retaliation on the basis of age and disability against Plaintiff, including, without limitation, failing to engage in an interactive process and/or provide Plaintiff reasonable accommodations, selecting Plaintiff for furlough, and/or terminating his employment.

93. These violations were intentional and willful and warrant imposing punitive damages.

94. Members of Defendants' upper management had actual participation in, and/or willful indifference to, Defendants' wrongful conduct described herein, and their conduct warrants imposing punitive damages against Defendants.

95. As a direct and proximate result of Defendants' violation of the NJLAD, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless this Court grants the relief requested herein.

## RELIEF

**WHEREFORE**, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant him the following relief by:

(a) declaring the acts and practices complained of herein to be in violation of the ADA;

(b) declaring the acts and practices complained of herein to be in violation of the

FMLA;

    (c)    declaring the acts and practices complained of herein to be in violation of the ADEA;

    (d)    declaring the acts and practices complained of herein to be in violation of the NJLAD;

    (e)    enjoining and permanently restraining the violations alleged herein;

    (f)    entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

    (g)    awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

    (h)    awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

    (i)    awarding punitive damages to Plaintiff;

    (j)    awarding liquidated damages to Plaintiff;

    (k)    awarding Plaintiff any other damages that are appropriate under the ADA, FMLA, ADEA, and NJLAD;

    (l)    awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

    (m)    granting any other relief that this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

                              **SIDNEY L. GOLD & ASSOC., P.C.**

                         By: /s/ Brian C. Farrell
                            Brian C. Farrell, Esquire
                            NJ ID No.: 129622014
                            Sidney L. Gold & Assoc., P.C.
                            1835 Market Street, Suite 515
                            Philadelphia, PA 19103
                            (215) 569-1999
                            bfarrell@discrimlaw.net
                            Attorney for Plaintiff, Alan Jenkins

Date: March 28, 2023